*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0290p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 08-1733

JERRY GUNTER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-20076-008—Robert H. Cleland, District Judge.

Argued: April 29, 2010

Decided and Filed: September 8, 2010

Before: MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Kimberly L. Beck, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellant. David J. Portelli, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Kimberly L. Beck, Michael J. Newman, Christopher McDowell, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellant. David J. Portelli, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

MARTIN, J., delivered the opinion of the court, in which KETHLEDGE, J., joined. CLAY, J. (pp. 9-12), delivered a separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Circuit Judge. Defendant-appellant Jerry Gunter pled guilty to drug-related charges and was sentenced to ninety-six months in prison. He

primarily appeals the procedural and substantive reasonableness of his sentence. He also appeals his conviction, contending that his guilty plea was not entered into knowingly and intelligently.[1] We **AFFIRM**.

## I.

Gunter was indicted as part of a large drug distribution conspiracy in Wayne County, Michigan, known as the "575 Gang." The gang had a rather sophisticated business model. Customers would call "customer service" numbers to place orders for crack or powder cocaine. A gang member would direct the customer to a meeting place and would then dispatch a delivery vehicle with the drugs. The customer and the delivery driver would conduct the transaction through the car windows. When the delivery vehicle ran low on drugs, it would return to the distribution hub for restocking. These vehicles operated twenty-four hours per day, seven days per week, and routinely sold several thousand dollars' worth of drugs per day. Gunter drove one of these delivery vehicles and sold small amounts of crack cocaine to undercover agents on three occasions.

Gunter initially pled not guilty and was released on an unsecured bond. After repeated inability to abide by the terms of his release, Gunter's bond was revoked. He thereafter pled guilty. A worksheet attached to his plea agreement estimated that his sentence would be sixty months in prison, which was the mandatory minimum for the offense of conviction, but it made clear that sixty months was just an estimate and that his sentence could be as high as forty years. The plea agreement also obliged the government to move for a three-level decrease in Gunter's offense level for acceptance of responsibility and substantial assistance. The government followed through on its commitment, and Gunter joined the motion.

---

[1] On appeal, Gunter also alleges a handful of instances of ineffective assistance of counsel. Except in rare circumstances not present in this case, claims of ineffective assistance must be addressed in the first instance by a district court pursuant to a claim under 28 U.S.C. § 2255. *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000). We therefore decline to address this aspect of Gunter's appeal.

The pre-sentence investigation report calculated Gunter's advisory Guidelines range as seventy to eighty-seven months, noticeably higher than the previously estimated sixty months. The increase was primarily due to the discovery of significantly more prior convictions than what had been reflected in the plea agreement. Gunter did not object to counting these prior convictions in his criminal history score.

The court set a sentencing hearing for April 10, 2008. It is evident from the transcript of this hearing that the court had devoted significant time and attention preparing for this hearing. Almost immediately, the court expressed a great degree of hesitation regarding the joint motion for an offense-level reduction for acceptance of responsibility and substantial assistance. Denying the motion would have resulted in a Guidelines range higher than the seventy to eighty-seven months calculated by the presentence report. The court indicated that it saw Gunter's post-arrest actions as incommensurate with an entitlement for a reward. However, the court recognized that the motion was a condition of Gunter's plea. So, instead of denying the motion, which would have resulted in a higher Guidelines range, or granting the motion, which would have resulted in the court's pronouncing sentence on a basis with which it was not completely comfortable, the court chose a laudable third course. It suggested that perhaps defense counsel should move for a continuance, during which time defense counsel and the prosecutor could put their heads together to come up with a way to convince the court to grant the offense-level reduction. Counsel took the cue and the court granted the continuance.

By the date the court reconvened the sentencing hearing, counsel had submitted additional argument in support of the offense-level reduction. Again, it is apparent that the court devoted significant time and effort to studying the case, and ruled that it would allow the defense level reduction on the basis of the supplemental argument. This resulted in a final advisory Guidelines range of seventy to eighty-seven months. The court then announced its inclination to vary above the Guidelines range, but it allowed counsel and Gunter an opportunity to argue in mitigation. After hearing the respective arguments and discussing the factors set forth at 18 U.S.C. § 3553(a), the court imposed

a sentence of ninety-six months in prison. In explaining its decision, the court focused primarily on Gunter's extensive criminal history and what it saw as his continued failure to respect the law, as evidenced by his post-arrest lawlessness that resulted in the revocation of his bond. The court also specifically explained that it would have varied above the Guidelines even had it denied the acceptance of responsibility credit, which would have resulted in an even higher sentence. Gunter now timely appeals.

## II.

### A.    Reasonableness of Sentence

The touchstone of appellate review of a district court's sentencing decision is reasonableness, a concept that has both a procedural and a substantive component. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). We typically employ the abuse of discretion standard to reasonableness review. *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008). However, where, as here, the defendant fails to lodge any objection at the end of the sentencing hearing in response to a properly worded invitation from the court in compliance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), we review only for plain error a challenge to the district court's explanation for the sentence selected. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc). Accordingly, with respect to Gunter's procedural claim, it is his burden to show (1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) affected the fairness, integrity, or public reputation of his judicial proceedings.

### 1.    Procedural Reasonableness

Gunter set forth numerous arguments in mitigation of his sentence. Three of these arguments were (1) his strong family ties, (2) his recognition of his serious drug problem and his need for help, and (3) his minor role in the overall operation of the 575 Gang. Gunter contends that the court committed procedural error by failing to explain adequately its reason for rejecting these arguments.

We immediately reject one third of this argument—that the court failed to explain why it was not persuaded that Gunter's drug problem counseled in favor of leniency. After reciting Gunter's numerous run-ins with the law, the court specifically stated, "If you were under the influence of drugs during this entire period of time from when you were 19 until you were 22 or 23 years of age, perhaps that could explain these kinds of things. But what I'm seeing is a pattern of very aggressive and oppositional behavior when you're confronted by anyone representing law enforcement interests." (Sent. Tr., 5/15/08, at 21:15-20.) It is thus clear that the court responded directly to Gunter's argument about his drug addiction and found it unpersuasive because it cannot account for all of Gunter's actions. However, as to the other two mitigation arguments, we agree that it would be a stretch to say that the court specifically and explicitly responded to them at any point during its explanation of its ruling.

It is well established that, as part of its sentencing procedure, a court must consider all non-frivolous arguments in support of a lower sentence. *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006) ("[T]he black letter law of this Circuit requires district courts to consider all factors brought to their attention by a defendant."). However, our cases are less than clear as to what must be the product of that consideration in order to allow for meaningful appellate review of the court's reasoning.

Are we to review the sentencing transcript with a focus on function, meaning that it must only be clear that the court listened to and considered the arguments and then explained its reason for imposing whatever sentence it decided upon? The Supreme Court seems to say as much: while "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances . . . [t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). And we have formulated the inquiry in virtually the same way: "The question in each case 'is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances

and took them into account in sentencing him.'" *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (quoting *Vonner*, 516 F.3d at 387) (internal quotation marks omitted) (alteration in *Vonner*).

Or do we require something more formal or formulaic, meaning that the court must respond to mitigation arguments point-by-point, *a la* "You have argued A; I am not persuaded because B. You have argued X; I am not persuaded because Y."? In *United States v. Carver*, we stated that the sentencing court "must articulate its reason for choosing a particular sentence, and it must specifically *address* any argument raised by the defendant at sentencing." 470 F.3d 220, 248 (6th Cir. 2006) (emphasis added). But this pronouncement begs the question of what it means to "address" an argument and, in any event, pre-dates the Supreme Court's formulation in *Rita*. Less ambiguous, at least at first blush, is our statement in *United States v. Garcia-Robles*: the district court is "required to consider, *and to explain its rejection of*, any non-frivolous arguments against the upward variance." 562 F.3d 763, 767 (6th Cir. 2009) (emphasis added). This pronouncement certainly suggests that a point-by-point discussion is required. However, the *Garcia-Robles* Court made this statement in a unique context. There, the primary issue was whether the defendant was given a meaningful opportunity to argue against an upward variance because he was not aware that the court was considering an upward variance. *Id.* When the court has given notice of intent to vary, the aggrieved party can offer argument against the variance before a final decision, and the court can then explain why it is nevertheless going forward with the variance, if it so chooses. In short, *Garcia-Robles* was about a defendant's inability to argue in the first place, not about the sufficiency of the court's response.

We believe that the better reading of these authorities is that our focus is functional in nature. The court must conduct a meaningful sentencing hearing and truly consider the defendant's arguments. *United States v. Wilson*, No. 08-1963, Slip Op. at 10-11 (6th Cir. July 19, 2010) (Martin, J., concurring). On appeal, we must determine whether, based on the entirety of the sentencing transcript and written opinion, if any, we are satisfied that the district court fulfilled this obligation. We are to focus less on

what the transcript reveals that the court said and more on what the transcript reveals that the court did. With this as our understanding of our task, we are easily satisfied that the court fulfilled its procedural duties in sentencing Gunter. As stated above, it is obvious from a review of the two sentencing transcripts that the court spent considerable time and effort on this case. The court displayed an uncommon familiarity with the facts from the outset of the hearings, engaged in a back-and-forth with counsel and Gunter, and explained the reason for its decision in a clear and straightforward manner. Furthermore, while the court perhaps could have said more, it certainly could have done less. Though it was under no duty to do so, the court took the time to convene a second hearing to allow Gunter to make additional argument regarding the offense-level reduction, a decision which clearly inured to Gunter's benefit. On this basis, we can comfortably conclude that the court meaningfully considered Gunter's case and mitigation arguments.

### 2.      Substantive Reasonableness

In selecting a sentence, the court must consider the factors set forth in section 3553(a) and arrive at a sentence "sufficient, but not greater than necessary, to comply with" those factors. 18 U.S.C. § 3553(a). A sentence will be deemed substantively unreasonable if the court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (citations omitted) (alterations in original).

Gunter claims that the court erred by placing "an unreasonable amount of weight" upon his criminal history. In so doing, Gunter conflates facts with factors. It is an undeniable fact that Gunter had a lengthy and alarming criminal history, and that this background caught the court's attention. But one fact may bear upon more than one of the section 3553(a) factors. Here, in deciding to impose a lengthy sentence, the court discussed Gunter's criminal history in relation to the need to promote respect for the law, the need for specific deterrence of future criminal conduct by Gunter, and the need to protect the public from Gunter's recidivist tendencies. It cannot be said that a lengthy

criminal history is irrelevant to these factors, so we are satisfied of the sentence's substantive reasonableness.

**B.       Validity of Guilty Plea**

We review de novo whether a plea was entered into voluntarily, knowingly, and intelligently. *United States v. Jones*, 403 F.3d 817, 822-23 (6th Cir. 2005). Gunter contends that he did not voluntarily, knowingly, and intelligently plead guilty because he did not realize "the likely consequences of his plea, *i.e.*, that his sentence would be 96 months [sic] imprisonment." (Appellant's Br. at 13.) Instead, Gunter contends, he was under the impression that his maximum sentencing exposure was sixty months, the statutory minimum for the crime to which he pled guilty. The record flatly contradicts this contention. The plea agreement, to which Gunter points as evidence of his belief that he would be sentenced to sixty months, also states that sixty months is just an estimate and that he could receive up to forty years in prison. The court confirmed this fact on the record before taking Gunter's guilty plea, and Gunter responded that he understood the situation. Nothing in the record suggests otherwise.

## III.

For the reasons set forth above, we **AFFIRM**.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

CLAY, Circuit Judge, concurring in part and dissenting in part. Although I would reach conclusions similar to the majority regarding the substantive reasonableness of Defendant's sentence and with respect to the validity of the plea, I write separately to express my disagreement with the majority's procedural reasonableness analysis. Specifically, I do not believe the district judge adequately explained Defendant's sentence, which renders Defendant's sentence procedurally unreasonable.

The majority opinion sets up a false dichotomy whereby the jurisprudence might require, on the one hand, that the sentencing court address *any* argument raised by the defendant at sentencing and engage in a "point-by-point" discussion. The majority understandably rejects that approach but adopts an equally untenable approach that it describes as "functional in nature"—which is to say that it prefers an approach that *assumes* that the sentencing judge has considered all of the defendant's arguments if the court displays a thorough familiarity with the facts of the case and takes the time at sentencing to engage in a back-and-forth dialogue with the defendant's counsel. The majority's approach presupposes too much by assuming that the district court must have considered issues that the district court completely failed to mention simply because the court spent a considerable amount of time addressing some, albeit completely different, sentencing issues. When the district court has addressed some of a defendant's arguments in detail but ignored others, it is equally plausible to assume that the district court failed to take into account the unaddressed arguments.

Procedural reasonableness requires, *inter alia*, that the sentencing judge "adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 50 (2007). Although the "appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances," *Rita v. United States*, 551 U.S. 338, 356 (2007), "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own

legal decision making authority".   *Id.*   When a defendant presents a nonfrivolous argument for imposing a different sentence, "the judge will normally go further and explain why he has rejected those arguments." *Id.* at 357; *see United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) ("Although the district court is not required to 'give the reasons for rejecting any and all arguments [made] by the parties for alternative sentences,' for a sentence to be procedurally reasonable, '[w]hen a defendant raises a particular [, nonfrivolous] argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" (alterations in original) (citation omitted)); *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2009) (citing *Rita*).   As this Court has previously stated,

> [e]xpressly articulating the grounds for rejecting the particular claims raised by a defendant, at least with respect to a defendant's nonfrivolous arguments, promotes several critical goals: (1) it provides the defendant with a clear understanding of the basis for his or her sentence; (2) it allows the public to understand the rationale underlying the chosen sentence; and (3) it helps this Court avoid the difficulties of parsing the sentencing transcript when determining whether the district court in fact considered the defendant's arguments.

*United States v. Wallace*, 597 F.3d 794, 804 (6th Cir. 2010) (quoting *United States v. Petrus*, 588 F.3d 347, 353 (6th Cir. 2009)).   Ultimately, the question is "whether [t]he record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Gapinski*, 561 F.3d at 474 (internal quotation marks omitted) (alteration in original).

     In this case, Defendant set forth three nonfrivolous arguments regarding his sentence, which were: (1) his strong family ties; (2) his recognition of his serious drug problem and his need for help; and (3) his minor role in the overall operation of the 575 Gang.  As the majority correctly states, the district court did respond to Defendant's argument regarding his drug addiction. However, the district court failed to address Defendant's two other nonfrivolous arguments regarding his sentence and the record

fails to indicate that the district court even considered them.  There was no reference by the district judge to Defendant's family support argument nor was there any discussion of or indication that the district court considered Gunter's alleged low level of involvement in the case.  Consequently, it cannot be said that the district court "provide[d] a clear explanation of why it . . . either accepted or rejected [Defendant's] arguments and thereby chose the particular sentence imposed." *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007).

The majority's approach makes it impossible for an appellate court to review the reasoning underlying the sentencing judge's disposition of the defendant's nonfrivolous arguments when those arguments are never even mentioned by the sentencing judge. *See Gall*, 552 U.S. at 50 (noting that a sentencing judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing"); *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (same); *see also United States v. Blackie*, 548 F.3d 395, 402 (6th Cir. 2008) ("Defendants have a right to meaningful appellate review of their sentences and [18 U.S.C.] § 3553(c) facilitates such a review by requiring the district court to state its specific reasons for imposing a particular sentence.").  The better rule would be to require the sentencing judge to sufficiently articulate his reasons for the sentence with respect to all of the defendant's nonfrivolous arguments so that the sentencing judge's reasons are decipherable, but not require the sentencing judge to engage in a formulaic statement of reasons.  *See United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008) ("While the district court need not 'engage in a ritualistic incantation' of the § 3553(a) factors, its opinion should be 'sufficiently detailed to reflect the considerations listed in § 3553(a)' and to allow for meaningful appellate review." (quoting *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006))).

By completely failing to address two of Defendant's three nonfrivolous arguments, the district court committed a clear error, thus satisfying the first two prongs of plain error review.  *See Wallace*, 597 F.3d at 806.  Defendant also satisfies the "substantial right" prong of plain error review as 18 U.S.C. § 3553(c) "generally

implicates a 'substantial right.'" *See id.* at 807.  Because it is "important not only for the defendant, but also for the public 'to learn why the defendant received a particular sentence,'" *Blackie*, 548 F.3d at 403, the district court's error also affected the "fairness, integrity, or public reputation" of Defendant's judicial proceedings.  *See id.*

Because Defendant's sentence is procedurally unreasonable even under plain error review, I respectfully dissent with regard to the procedural reasonableness analysis set forth in the majority opinion.