NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0570n.06

No. 13-2244

**FILED**
Jul 28, 2014
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| RAMON BERLANGA-RODRIGUEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE:** GUY, KETHLEDGE, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.** Ramon Berlanga-Rodriguez was sentenced to the thirty-year statutory maximum sentence for sexual exploitation of his minor niece, a child who lived with the Defendant for most of her childhood. He now appeals, arguing that his sentence is substantively unreasonable because the district court ignored his request for a variance and information raised in his sentencing memorandum, resulting in a sentence that is longer than necessary to meet the goals of 18 U.S.C. § 3553(a). Because the sentencing court did not ignore mitigating factors, rely on impermissible considerations, or impose a sentence arbitrarily, we **AFFIRM** Berlanga-Rodriguez's sentence.

## I.    BACKGROUND

Ramon Berlanga-Rodriguez sexually molested and photographed his niece, a child who lived with him for fourteen years. According to the victim, Berlanga-Rodriguez had a history of

violence toward her. When the victim was fourteen-years-old, he began grooming her for a different kind of abuse with sexual touching, sexually explicit internet videos, and eventually alcohol and Ecstasy. Then, between September 2011 and January 2012, Berlanga-Rodriguez had oral sex or sexual intercourse with the victim approximately 50 to 60 times and took pictures and videos of the acts. The victim was under the impression that Berlanga-Rodriguez was selling the videos—earning over $50,000 to pay off a restitution order resulting from a prior criminal conviction for embezzlement—but it appears that the "buyer" was a fictitious person and he never distributed the videos.

Berlanga-Rodriguez repeatedly denied making pornographic videos of the victim or having sexual intercourse with her even after investigators showed him the videos. Eventually he changed his story and said that the victim began making pornographic videos on her own, that the victim gave him Ecstasy which led to sexual touching, and that the victim requested that they have oral sex and sexual intercourse for money. He ultimately pleaded guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a). Berlanga-Rodriguez admitted that "he failed to consider the long-term consequences for the victim" and that "the Ecstasy may have interfered with his decision making." The government agreed to drop a second charge for possession of images of a minor engaging in sexually explicit conduct.

The presentence investigation report (PSR), which the district court adopted with no objection, assigned Berlanga-Rodriguez an offense level of 43. It also assigned him a criminal history category of II due to prior state convictions for identity theft and embezzlement from a nonprofit organization where Berlanga-Rodriguez had served as executive director. This resulted in an advisory guideline range of 360 months to life imprisonment; however, the statutory range for the offense is 15 to 30 years, so 360 months became the guidelines sentence.

Prior to sentencing, Berlanga-Rodriguez filed a motion for a downward variance, arguing that the factors under § 3553(a) warrant a lower sentence in his case; he asked for a sentence as low as 15 years. His argument was based on: his family background as a hard-working legal immigrant; the "series of bad choices"—starting with his embezzlement conviction and divorce and ending in drug use and sexual abuse—that led to the current conviction; studies showing that a fifteen-year sentence would reflect the public's sense of just punishment for sexual abuse crimes; the low risk of recidivism generally present in sex offenders who commit incest; Berlanga-Rodriguez's age of 41 years; and the unwarranted sentencing parity that a maximum sentence would create with repeat offenders who abuse multiple victims. He attached letters of support from one of his brothers and from his girlfriend, both indicating that he is a supportive family member and a community leader. Also prior to sentencing, the victim submitted a letter explaining the impact of Berlanga-Rodriguez's abuse and concluding "[t]he day that I am told [Berlanga-Rodriguez] has received the maximum penalty for his actions; I will sleep easy, and feel like I have regained 18 years of my life back."

At sentencing, the court mentioned the downward variance motion and gave both defense counsel and Berlanga-Rodriguez an opportunity to speak. Defense counsel reiterated some of the information in the motion and indicated that the high guideline range in this case was due to the 19 levels of enhancements. Berlanga-Rodriguez told the court that during the six-month period that he abused the victim, it never occurred to him that his behavior was immoral, illegal, or damaging to the child and that he was taking Ecstasy the entire time. The court then began an explanation, which is quoted in more detail below, about Berlanga-Rodriguez, the nature of his offense, and the need for deterrence and protection of the public. The court noted that this was a very serious crime causing "profound" and ongoing damage in the victim's life; Berlanga-

Rodriguez committed it despite coming from a moral, functioning, and hard-working family; and his past embezzlement from the nonprofit organization "indicates some terribly selfish, illegal, immoral behavior." Of the § 3553(a) factors, the court said that the seriousness of the offense, Berlanga-Rodriguez's lack of respect for the law, the need for adequate deterrence, and—to a lesser degree—the need to protect the public, warranted a 360-month sentence. This sentence reflects the statutory maximum for this crime, as well as the recommended guidelines sentence.

Berlanga-Rodriguez now challenges the 360-month sentence on appeal.

## II. ANALYSIS

This court reviews criminal sentences for both substantive and procedural reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). Berlanga-Rodriguez raises only a substantive reasonableness challenge, which we review under the abuse-of-discretion standard. *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011). "The essence of a substantive-reasonableness claim is whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010) (internal quotation marks omitted). Substantive unreasonableness "will be found when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Cooper*, 739 F.3d 873, 883 (6th Cir. 2014). In general, we give deference to the sentencing court's conclusion that a particular sentence is warranted by the § 3553(a) factors and do not reverse simply because we might reasonably conclude that a different sentence is appropriate. *United States v. Bolds*, 511 F.3d 568, 581 (2007).

Berlanga-Rodriguez concedes that his sentence is within the advisory guideline range and that such sentences are given a rebuttable presumption of substantive reasonableness. *See id*. Nevertheless, he argues that the presumption is rebutted in his case because the district court imposed a sentence that was greater than necessary by ignoring his request for a variance, the information in his sentencing memorandum, and his argument that a statutory maximum sentence would create an unwarranted parity between him and those who commit multiple acts of abuse against multiple victims. Based on this record, we cannot agree.

The district court acknowledged the motion for a downward variance, and, while considering each of the § 3553(a) sentencing factors, specifically addressed the various facts raised by the Defendant in his sentencing memorandum. As for Berlanga-Rodriguez's family background, the court found it "shocking" that he would commit this crime despite having been raised in a moral, functioning, and drug-free family that had worked hard to better themselves and to be role models for their children. There was "no excuse in [his] background for what [he] did;" it was a "deliberate choice . . . most probably for [his] own gratification." In considering Berlanga-Rodriguez's work for nonprofit organizations, the court found "nothing noteworthy that indicates any selflessness. If anything, that prior conviction indicates some terribly selfish, illegal, immoral behavior." Finally, the court made what appears to be a reference to defense counsel's arguments that there is a low risk of recidivism, saying that protecting the public from Berlanga-Rodriguez is "[n]ot a large factor, but . . . it is a factor which this Court should take into mind."

The court considered and rejected Berlanga-Rodriguez's argument that a statutory maximum sentence would create an unwarranted sentencing parity with repeat or more serious offenders. After acknowledging the sentencing memorandum and hearing arguments from

counsel explaining that the high guideline range was due in large part to the 19 levels of enhancements—for the victim's age, the sexual acts, the fact that Berlanga-Rodriguez was the victim's primary caretaker, and an image that depicted sadomasochistic behavior—rather than for past sex crimes, the court spent a good deal of time on the seriousness of the offense. The court questioned Berlanga-Rodriguez, who told the court that he was taking Ecstasy for the entire six-month period during which he had sexual relations with the victim 50 to 60 times, and that during that period it never occurred to him to stop or that his behavior was immoral, illegal or damaging to the child's psychological welfare. The court listened to Berlanga-Rodriguez as he put the responsibility for the victim's drug consumption and internet behavior on the victim herself. The court mentioned the letter submitted by the victim and elicited acknowledgement that Berlanga-Rodriguez's behavior had "really damaged" the victim. Finally, the court addressed the "very serious" nature of the crime, committed during a "very vulnerable time" for the victim, in which Berlanga-Rodriguez "t[ook] advantage of th[e] opportunity with the libations of Ecstasy and alcohol," and which worked profound destruction on the victim's life likely requiring significant counseling and care.

In other words, the court saw the facts differently than the Defendant and found the crime to be very serious. Though the court did not make a formulaic recitation, its actions rejected the argument that Berlanga-Rodriguez's crime was not on par with repeat offenders. *See United States v. Gunter*, 620 F.3d 642, 646-47 (6th Cir. 2010). The district court met its responsibility in this case, going through each sentencing factor and considering what would be a "sufficient sentence, but not greater than necessary."

Finally, Berlanga-Rodriguez points to cases in which this court affirmed lower sentences for similar crimes and argues that this suggests "approval" of lower sentences. In *United States*

*v. Richards*, 659 F.3d 527, 550-52 (6th Cir. 2011), for example, this court affirmed a sixteen-year sentence for a defendant who had produced and distributed child pornography involving a thirteen-year-old boy. Berlanga-Rodriguez attempts to invert the standard of review. *Richards*, in fact, reflects the extent of deference owed to the sentencing judge. Despite the fact that this court found "troubling aspects in the district court's sentencing rationale, particularly its mitigation of the seriousness" of the crime, the sentence was affirmed because the sentencing court had thoroughly weighed the arguments, understood the sentencing options, and provided sufficient justification for the sentence. *Id*. at 550-51. Here, we similarly must conclude that the court weighed the arguments, understood the sentencing options, and provided sufficient justification for the sentence.

Based on the facts specific to this case, we cannot conclude that the court ignored mitigating factors, relied on impermissible considerations, or imposed a sentence arbitrarily. Thus, the court did not abuse its discretion by imposing a 360-month sentence.

### III.    CONCLUSION

For the reasons explained above, we **AFFIRM** Berlanga-Rodriguez's sentence, as imposed by the district court.